THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ESGOOBIE AFARIAN, Appellant.

County Court, Broome County, December 4, 1951.

200 

*Travis & Whiting* for appellant.

*Samuel Bernstein, District Attorney,* and *Chernin & Gold* for respondent.

BARNES, Acting Judge. This is an appeal from a judgment of conviction in the City Court of the City of Binghamton, by a jury, of the crime of assault in the third degree. The details of the complaint are not material; they grew out of a neighborhood quarrel between the defendant and a Mrs. Marderian and her grown son. In addition to these two people, there was also present the husband of the defendant during part of the battle. The defendant was victorious. There are a considerable number

of errors alleged in the trial but there is one which has especial importance in view of the recent decision of the Court of Appeals.

Upon the trial of the action, the defendant did not take the stand and her husband did not become a witness. In the summation of counsel representing the People, he called the attention of the jury to the fact that the defendant was not obliged to take the stand; that the law gave a defendant that privilege, and that it was a good law and etc. and etc., *but* that the defendant could have proved her innocence by swearing her husband, who was available and could have been produced, and that, therefore, the jury was entitled to the presumption that his testimony would have been adverse and, therefore, she should be convicted. This is proper, if the witness is not privileged; but improper if this testimony would disclose confidential communications. This was strenuously objected to on the part of the defense counsel and rulings made thereon and exceptions were duly taken, the Judge stating that he would take care of the matter in his charge. Thereupon the counsel for the People reiterated the same argument again. In the Judge's charge, he stated that the defendant was not obliged to take the stand; that no presumption arose against her by not doing so, but he failed to instruct them in regard to the failure of her husband to become a witness.

At least part of the husband's information was privileged communications between the husband and wife. (*People* v. *Daghita,* 299 N. Y. 194, 199.) " 'Its nature, and the relation of the parties, forbade the thought of its being told to others, and the law stamped it with that seal of confidence which the parties in such a situation would feel no occasion to exact.' " Certainly a woman would not commence an assault, as alleged, against a soldier and a grown woman whom she could " lick ", in the presence of her husband, unless this relationship was confidential. She was taking the family groceries home at the time. Any statement which she made to her husband at any time would certainly be a confidential statement to which she was entitled to protection. Assume that he had testified as a defense witness, and on cross-examination he was asked if upon retiring that evening he noticed any abrasions on his wife's body or if he felt any misplaced lumps! Nothing could be more confidential or privileged. That being so, the prosecution could not call the husband and compel him to testify against her. The prosecution waited for the defendant to call the husband as a witness and he would thereby become subjected to a cross-

examination which would be more dangerous than the direct examination. When the defendant failed to call the husband, the prosecution seized upon this in his summation to the jury as being equivalent to the positive testimony of the husband against the wife. He thereby accomplished, more forcibly, the evil contained in the case cited above than he could have done by using the husband as a direct witness. I doubt if there is a precedent reported; at least, my attention has not been called to any such precedent. If this can be passed up, it would become the accepted procedure in any case in which this privilege of the spouse arises.

The Court of Appeals has recently condemned the extending of protection with one hand and taking it away with the other. (*People* v. *Richetti*, 302 N. Y. 290). To permit the practice pursued in this case would make ineffective the determination of the Court of Appeals in *People* v. *Daghita* (*supra*). If the husband's testimony was not all within the privileged class, some of it was. The calling of a witness by a party who could assert a privilege waives that privilege. (*Apter* v. *Home Life Ins. Co.*, 266 N. Y. 333.)

Additionally, the misconduct of the private prosecutor requires a new trial. (*People* v. *Fielding*, 158 N. Y. 542; *People* v. *Riley*, 191 Misc. 888.) In his summation, the attorney prosecuting the case eloquently dwelt upon the failure of the defendant to deny the testimony of the People. He did not specifically refer to the fact that the defendant was the only witness (except her husband and one police officer) who could have denied these various facts, but the meaning was the same and the intent was the same. The prosecuting attorney knew that these facts were denied and controverted by the presumption of innocence, which the law gives the defendant, and by her plea of not guilty. He then tries to avoid the implication by stating that she has a right not to be sworn but the language he uses is ambiguous where he says " but she is not entitled to that benefit when ". This comes from a lawyer who is not a young man inadvertently misspeaking but from a competent, experienced attorney of long standing. This is what is known as holding with one hand and clubbing with the other. The cases have been uniform in holding that reference to the failure of the defendant to take the stand is improper and that if it is a deliberate, intentional act and could have influenced a jury, the verdict of the jury should be reversed. The last pronouncement of the Court of Appeals is *People* v. *Leavitt* (301 N. Y. 113). The court has,

in important cases, held that such errors may not be sufficiently serious to upset the verdict of the jury, where the evidence is overwhelming, but that they are improper. (*People* v. *Minkowitz,* 220 N. Y. 399.) In the case of *People* v. *Springer* (137 App. Div. 304, 305) the court said: " Under our statute (Code Crim. Pro. § 393) no reference to this fact can properly be made to his detriment, and yet the record discloses that the prosecuting counsel in an excess of zeal more than once indulged in covert allusions to the appellant's failure to defend himself. On the whole we are of the opinion that the ends of justice will be best served if the judgment and orders appealed from be reversed and a new trial granted ". That is the exact situation in this case and the effect of it was the determining point, in my opinion, in obtaining a conviction in this case. A prosecuting attorney does not ordinarily refer to the rights of the defendant to remain mute unless he believes it is the best way to convict her. (See *People* v. *Watson,* 216 N. Y. 565.)

The court said, in this case: " I suggest counsel refrain from discussing the question of whether or not the defendant took the stand," and " I don't think you should go into the question touching the defendant." That comes far from correcting the damage which had been done.

Near the close of the prosecutor's summation, at a point where it would be most effective, Mr. Chernin said, " There is no grudge on my part, but I do feel this, if you are going to have a decent community, safe and decent community, if our community is going (to be?) a decent place to live in for us to bring our children up in, these things must not go on. They must be stopped." This was continued with an eloquent plea to the jury to spare the community at the expense of the defendant and not to worry about the punishment of the defendant. It is absolutely improper for the attorney to express his own personal views of the guilt or innocence of a defendant and to urge his personal views upon the jury. (23 C. J. S., Criminal Law, § 1104, p. 578.) It is most improper to urge a conviction by means of an assurance of a soft penalty (*People* v. *Lynch,* 284 N. Y. 239). It is likewise improper to urge a conviction of an innocent person as an example in the community, but combined, they are extra-crushing. (*People* v. *Mull,* 167 N. Y. 247.) Objection was duly taken by the defendant's attorney and the court stated, " I will take care of that, I think. Denied." However, the charge to the jury fails to make any reference to the improper summation. From all that appears, the court approved

of it. The jury could very well have convicted the defendant because she was the winner rather than because she was the aggressor. The court's charge upon self-defense is not satisfactory. The use of the word " assault " in place of " use of force " might tend to confuse; the jury should know whether or not a person was obliged to retreat or whether she had the right to stand her ground (*People* v. *Katz,* 263 App. Div. 883) and under the circumstances here they should have been told that they should not convict the winner in order to uphold the dignity of the community.

The question as to who is the aggressor in this case is a very controversial matter. On page 104 in the prosecutor's summation, he states that there is no denial that the defendant stood in front of the Marderian house for several minutes; five, eight or ten minutes while the Marderian woman and her husband sat on the porch on the second floor and told her to go home. It was a free public highway and the Constitution gives her the right of free speech. Who were they to tell her where to go? It would appear that she then came downstairs where the defendant had been standing and the prosecutor says that the defendant stood her ground for five, eight, ten or fifteen minutes. I know of no obligation that she had to retreat. Under these facts, a jury very well could have found that Mrs. Marderian came downstairs looking for something and that she got it.

The defense of double jeopardy was also tried in this same trial before the same jury and the evidence of the former trial was introduced upon that point. A complaint had been made out by John L. Sullivan, a police officer who made the arrest on August 28, 1947, and on the same day a complaint had been made out by Noah Marderian for assault in the third degree. Both of these complaints are in evidence and there is very little difference except that the disorderly conduct complaint adds that this defendant started to fight *again* after Officer Walker stopped the fight which was in progress when he arrived. No facts are contained in the information except fighting. It does not show which warrant was sworn out and served first, but the disorderly conduct was tried first and resulted in a conviction of the defendant. On that trial, Officer Walker, who was present at all times that Officer Sullivan was present, testified, " Did you see any blows struck after you separated them, by her?" Answer, " No ". Officer Sullivan testified that there were blows struck but both officers testified that before they got there they saw this fight in progress. Upon this point the court said, " You

can see when you look at it, it is not a very scholarly complaint, but sometimes police officers don't make very scholarly complaints." I am unable to find any fault with this complaint; in fact, it looks better than the complaint made out by Noah Marderian, who presumably was represented by counsel as he had counsel upon his trial. Also, the court said, " Now it is a difficult thing sometimes to follow this double jeopardy and you may have some trouble with it. I don't think you will. I hope you won't." The court then proceeds to illustrate, by examples, what he is trying to explain. He sets no standard by which the jury is able to pass intelligently upon this question of whether or not the crime is the same crime. He does not define the crime of disorderly conduct. He does not tell when an assault starts or stops. I got the impression from reading the charge that the jury could find that an assault consisted of one blow and that where several blows were struck that he intended the jury to believe that each one of those blows was a separate assault and that, therefore, there could be a multitude of cases of assault here, growing out of the same transaction. That is not so. To extend that reasoning to the ridiculous, you could argue that each hair pulled was a separate assault. The court should have charged the jury as to what a continuing crime means and to the effect that an assault means a continuous crime commencing with the first blow and ending with the last blow, and that unless this fracas was broken off at various times there would only be one crime, but that if it was discontinued and ended and started again that they could find two crimes, three crimes or four crimes, depending upon how many times it was stopped and started. (*People* v. *Cox*, 286 N. Y. 137; *People* v. *Daghita*, 301 N. Y. 223, 225; *People* v. *Shoemaker*, 191 Misc. 522, affd. 274 App. Div. 961.) Without explaining this to the jury, it would be a difficult thing for the jury to know what was expected of them. The court could only hope for the best. He should have told them whether or not they were to be guided by the information or by the evidence given in the cases or by both. With such information, the jury might have decided that there were, at most, only two assaults; one before the officers arrived and one after; and that the information of Officer Sullivan included both of those fights, and that the information of Noah Marderian included the first fight and that, therefore, the same acts were alleged in both informations, and that evidence was given upon both trials of the first encounter. If this were, as a matter of fact, true: only two separate attacks or assaults; then the assault

upon this trial was the same assault as one of those upon the previous trial and, therefore, it was double jeopardy. If there were more than two assaults, the answer might have been different. As this is a matter of fact to be decided by the jury, I do not wish to usurp their duties and hold that the case was, as a matter of law, the same prosecution as the disorderly case, and I am, therefore, ordering a new trial of the case and leaving that question to be determined upon the new trial also. Upon the new trial, the question of double jeopardy should be submitted in a plain, understandable question for the jury to understand. The jury did not understand the question submitted here, as it took pages and pages of instructions and it is doubtful if they ever understood what they were doing. At least, it overemphasized an unimportant question and drew the jury's attention from the main questions of guilt or innocence or of double jeopardy.

The judgment of conviction is reversed and the case remitted to the trial court for a new trial.

Submit order accordingly.