[No. 3134-1.   Division One.   July 12, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. ALEXANDER B. TORRES, JR., ET AL, *Appellants*.

*Snure, Gorham & Varnell* and *James L. Varnell,* for appellants.

*Christopher T. Bayley, Prosecuting Attorney,* and. *H. Duane Evans, Deputy,* for respondent.

CALLOW, J.—The defendants Alexander Torres, Ralph Castillo, and Ramon Garza appeal from convictions of rape and first-degree burglary. We reverse the convictions and remand for retrial because of continued prosecutorial misconduct which denied the defendants a fair trial.

The information charged all three defendants with having committed rape on the 19th day of January 1974. The same information also charged the defendants Torres and Garza with having committed first-degree burglary on the same date. The defendants were tried together and each moved for a mistrial a number of times throughout the trial based on various allegations of misconduct by the prosecutor. These motions were denied. The jury returned a verdict of guilty against each defendant as charged. The claims of prosecutorial misconduct were reasserted in motions for new trials, which were denied also.

This appeal presents for consideration whether the conduct of the prosecutor prejudicially violated the defendants' right to a fair trial.

■ Every prosecutor is a quasi-judicial officer of the court, charged with the duty of insuring that an accused receives a fair trial. *State v. Huson*, 73 Wn.2d 660, 440 P.2d 192 (1968), *cert. denied*, 393 U.S. 1096, 21 L. Ed. 2d 787, 89 S. Ct. 886 (1969); *State v. Reeder*, 46 Wn.2d 888, 285 P.2d 884 (1955); *State v. Harold*, 45 Wn.2d 505, 275 P.2d 895 (1954); *State v. Carr*, 160 Wash. 83, 294 P. 1016 (1930). We find that the prosecutor's trial behavior constituted misconduct violative of that duty during the opening statement, the interrogation of witnesses, and the closing argument.

## THE OPENING STATEMENT

■ During the prosecutor's opening statement it was improperly suggested that the defendant Castillo, charged in the information with rape, could also have been charged with burglary. This suggestion was uncalled for and asked the jury to infer that the defendant Castillo was guilty of other crimes not charged in the information. *State v. Ranicke*, 3 Wn. App. 892, 479 P.2d 135 (1970). In *State v. O'Donnell*, 191 Wash. 511, 71 P.2d 571 (1937), the prosecutor, in opening, stated that the evidence would show that the defendant had a prior record. The court said that such remarks at the initial stage of the trial were so prejudicial to the defendant that he could not thereafter have had a fair trial. The opinion quoted from an earlier case and continued as follows:

> "It may be that the defendant is guilty. On that we express no opinion. It must be remembered, however, that 'though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community'." *State v. Pryor*, 67 Wash. 216, 121 Pac. 56; citing *Hurd v. People*, 25 Mich. 404.

The prosecutor's remarks violated certain principles, basic in our system of criminal procedure. First, he placed the appellants' character in issue in advance of their taking the witness stand to testify in their own behalf; second, he asked the jury to hang the appellants not

alone for the specific offenses with which they were charged, but "for the other burglaries and the records that will show from the evidence"; and third, by charging the appellants with the commission of collateral crimes, he placed them in a position where they had either to take the witness stand or rest under the imputation of those crimes; this being, in effect, a specie of compulsion to testify in violation of the immunity granted by the Federal and state constitutions. If the court had permitted the state to introduce evidence tending to show the commission by the appellants of other felonies, the error of the procedure would not be questioned, nor would the court hesitate to grant a new trial.

*State v. O'Donnell, supra* at 513-14.

██ In opening, the defendants were referred to as Mexicans or Mexican-Americans a number of times, a racial reference that the trial judge considered "fairly close to misconduct." We do not condone any reference to a person's race which is intended to slur or to disparage either the person or the race. Each citizen could be categorized and described by his or her ethnic background as one type or another American. We have put aside such references in the knowledge and hope that there should be no hyphenated Americans, but only "Americans." The remarks of the prosecutor were such that we could not tell from the record whether the remarks were meant to slight the defendants in the eyes of the jury or not. What we can say is that the trial court was concerned about the impact of the statements. He observed that he was bothered by the prosecutor repeatedly referring to the defendants as Mexican-Americans while referring to the complaining witness as "Ms." and "Mrs." The statements of the prosecutor were unfortunate at best. The record reveals that the references may have been inadvertent, but that, in any event, their effect may have been to impugn the standing of the defendants before the jury and intimate that the defendants would be more likely than those of other races to commit the crime charged. Such an inference is improper and prejudicial. *See State v. Cohn*, 155 Wash. 644, 285 P. 665 (1930). This is a factor to be weighed in evaluating

whether the trial was conducted as an impartial quest to discover truth, or permeated with prejudice from its inception.

■ The prosecutor so phrased the opening statement that much of what was said was stated in the form of testimony and not in the form of an outline of the facts that would be proved. An opening statement should not be argumentative, inflammatory, misstate what will be contained in the evidence, or contain expressions of the personal belief of the prosecutor. *State v. Haga*, 13 Wn. App. 630, 536 P.2d 648 (1975), *cert. denied*, 425 U.S. 959, 48 L. Ed. 2d 204, 96 S. Ct. 1740 (1976). Here, to some extent the opening statement became a narrative which recounted the story of the alleged crime in a manner which prompted the trial judge to say "It does constitute almost testimony by the prosecutor who is not under oath." This also was improper. *See State v. Collins*, 50 Wn.2d 740, 314 P.2d 660 (1957); *State v. Case*, 49 Wn.2d 66, 298 P.2d 500 (1956).

### THE PRESENTATION OF EVIDENCE

■ During the presentation of evidence, the prosecutor persisted despite warnings in asking leading questions during the examination of the victim. As stated in *Locken v. United States*, 383 F.2d 340 (9th Cir. 1967):

> The prosecution undertook to prove the contrary, principally by oral declarations which government witnesses testified that the appellant and Kidd had made. As these witnesses were examined, the prosecuting attorney repeatedly suggested his desired answers. Time after time, objections to the leading questions were sustained; yet the prosecutor persevered. Ultimately, the court was required to find him contemptuous, stating "you have constantly and continuously engaged in this leading question business after I have repeatedly warned you and warned you and warned you. You leave me no alternative."

While the asking of leading questions is not prejudicial error in most instances, the persistent pursuit of such a course of action is a factor to be added in the balance. *State*

*v. Swanson*, 73 Wn.2d 698, 440 P.2d 492 (1968); 5 R. Meisenholder, Wash. Prac. § 261, at 225 (1965).

█ During cross-examination of a witness for the defense, the prosecutor asked the witness whether the defendants had testified at the preliminary hearing. The witness answered in the negative, but, nonetheless, this brought to the attention of the jury the fact that the defendants were not testifying. This was a comment upon the defendants' exercise of the privilege against self-incrimination and was improper. *State v. Holmes*, 110 Ariz. 494, 520 P.2d 1118 (1974); *State v. Anderson*, 110 Ariz. 238, 517 P.2d 508 (1973).

In *State v. Ashby*, 77 Wn.2d 33, 459 P.2d 403 (1969), it was held that while a prosecutor may comment upon the fact that certain testimony is undenied, it is error to draw the attention of the jury to a defendant's failure to testify. *See also Malloy v. Hogan*, 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964); *Seattle v. Hawley*, 13 Wn.2d 357, 124 P.2d 961 (1942); *State v. Pavelich*, 150 Wash. 411, 273 P. 182, *aff'd*, 153 Wash. 701, 279 P. 1107 (1928); *State v. Messinger*, 8 Wn. App. 829, 509 P.2d 382 (1973), *cert. denied*, 415 U.S. 926 (1974). Further, no cautionary instruction was given to dispel the suggestion implanted in the minds of the jury. *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Goldstein*, 65 Wn.2d 901, 400 P.2d 368, *cert. denied*, 382 U.S. 895 (1965); *State v. Messinger, supra*. The comment here was sufficient to alert a jury to the failure of the defendants to take the stand and constitutes another error which, when considered in the light of the complete trial proceedings, added to the aura of unfairness.

### The Closing Argument

In the closing argument, the prosecutor stated:

Now, where is his wife to testify for him? Now, he has exactly the same subpoena powers as the State, and he could have forced her to come in and testify. Now, as you recall, he testified that she has left him over this very incident.

But she is not here to say—there is no corroboration on

that. . . . I am sure if that were the case with any one of you, you would have your spouse here to testify to that, even if you were divorced or separated from them, especially in a serious charge—

[Defense counsel]: Objection, your Honor. Counsel is well aware of the husband and wife privilege.

[Prosecutor]: Counsel brings up a point. I know the husband and wife privilege.

In *State v. Swan*, 25 Wn.2d 319, 171 P.2d 222 (1946), prosecutorial argument alluding to the legal inability of the prosecutor to call the defendant's spouse was held to be prejudicial. The opinion notes that such argument tells the jury that a defendant is guilty of concealing evidence which would be helpful to the State. Commenting on the statute (now RCW 5.60.060(1)), the opinion states:

> There inheres in this statute the mandatory provision that no inference of guilt shall arise from the failure of a wife to testify for or against her husband, or for a husband to testify for or against the wife. It follows that the full protective force of the statute is not secured if the silence of the wife be construed against the husband in a criminal action . . . The remarks of the prosecuting attorney upon the failure of appellant to waive the privilege, which was his, of not permitting his wife to testify against him, constituted prejudicial comment.

*State v. Swan, supra* at 327.

Comment upon the exercise of a privilege has been held improper, justifying a new trial, in *Sumpter v. National Grocery Co.*, 194 Wash. 598, 78 P.2d 1087, 116 A.L.R. 1166 (1938), and in *Kiehlhoefer v. Washington Water Power Co.*, 49 Wash. 646, 96 P. 220 (1908). Such comment is prejudicial. *State v. Tanner*, 54 Wn.2d 535, 341 P.2d 869 (1959); *State v. McGinty*, 14 Wn.2d 71, 126 P.2d 1086 (1942); *State v. Winnett*, 48 Wash. 93, 92 P. 904 (1907). The majority of jurisdictions hold that it is improper in criminal cases for the prosecution to comment on the exercise by one spouse of the privilege not to have the other spouse testify as a witness. *Courtney v. United States*, 390 F.2d 521 (9th Cir.), *cert. denied*, 393 U.S. 857 (1968); *People v. Kefry*, 166 Cal. App. 2d 179, 332 P.2d 848 (1958); *State v. Levy*, 160 N.W.2d

460, 32 A.L.R.3d 893 (Iowa 1968); *State v. Kampert*, 139 Minn. 132, 165 N.W. 972 (1918); *State v. Lowery*, 49 N.J. 476, 231 A.2d 361 (1967); *People v. Afarian*, 202 Misc. 199, 108 N.Y.S.2d 533 (1951); *White v. State*, 268 P.2d 310 (Okla. Crim. 1954); *State v. Brown*, 14 Utah 2d 324, 383 P.2d 930 (1963).

During closing argument, counsel for Mr. Castillo stated:

We are dealing with a serious charge, a charge that if it results in conviction, can lead to serious consequences that would affect the liberty of my client, Mr. Castillo.

Again in argument he stated:

But we are talking about a very serious charge, ladies and gentlemen, rape. And this is a felony that carries very serious consequences.

In rebuttal argument the prosecutor responded to this and persisted in commenting upon the question of punishment as follows:

Now, [defense counsel] in his argument indicated that you were going to determine whether or not his client would be at liberty or not and you were going to determine the punishment. Well, the fact of the matter isn't that at all. You are the triers of the fact. You have to determine what happened and when it happened. Punishment, if any, in this case will be determined by Judge Stephens. He has heard all this testimony, all the background. He will see additional reports from counsel and from the probation officer, and from everybody else.

[Defense counsel]: Your Honor, I object. This is highly suggestive argument.

[Prosecutor]: Counsel opened it up, your Honor.

[Defense counsel]: I would agree, your Honor, and I would state for the record that she has misstated the remark of [defense counsel], your Honor. At no time did he infer the jury was to have anything to do with—

THE COURT: All right. We don't need any additional argument on this.

[Defense counsel]: Fine.

[Prosecutor]: Thank you, your Honor.

Judge Stephens will have total discretion as to what happens to these defendants after you make your determination and render your verdict in the matter. He has a lot of alternatives available to him.

[Defense counsel]: Your Honor, I thought we had closed this area.

[Defense counsel]: Your Honor, it's of no moment to the jury—

[Prosecutor]: Your Honor, counsel opened it up.

THE COURT: Let's proceed with your closing argument.

[Prosecutor]: Thank you, your Honor.

Judge Stephens has a lot of alternatives open to him, and he can choose anything from a deferred sentence on this—

[All counsel]: Your Honor, objection.

■ This exchange is indicative of the penchant of the prosecutor for persisting in pursuing matters that were not properly before the jury despite the patient attempts of the trial judge to keep the trial within the bounds of relevancy and admissibility. Prosecutorial argument that an accused may receive probation is generally considered to be improper, and the issue then arises whether the impropriety has been prejudicial. *See Lovely v. United States*, 169 F.2d 386 (4th Cir. 1948); *Fryson v. State*, 17 Md. App. 320, 301 A.2d 211 (1973); Annot., 16 A.L.R.3d 1137, 1140 (1967). Such comment may distract the jury from its function of determining whether the defendant was guilty or innocent beyond a reasonable doubt by informing them, in substance, that it does not matter if their verdict is wrong because the judge may correct its effect. In Washington, the cases that have discussed the problem have been primarily concerned with the issue of the death penalty and have not faced the current problem squarely. *See State v. Talbott*, 199 Wash. 431, 91 P.2d 1020 (1939); *State v. Buttry*, 199 Wash. 228, 90 P.2d 1026 (1939); *State v. Knapp*, 194 Wash. 286, 77 P.2d 985 (1938); *State v. Stratton*, 170 Wash. 666, 17 P.2d 621 (1932).

We hold that continuing to underscore the irrelevant argument in the face of the consistent sustaining of objections to the argument by the trial judge constituted yet another error that added to the unfairness that permeated the trial because of the overreaching of the deputy prosecutor.

We have recounted at length a number of the errors

brought about by prosecutorial misconduct during the course of the trial. Some of those errors, standing alone, would require a retrial of this cause. Others *standing alone* would not amount to prejudicial error requiring a retrial. However, the incidents of misconduct throughout this trial were so numerous as to irreparably taint the proceedings. As stated in *State v. Case*, 49 Wn.2d 66, 73, 298 P.2d 500 (1956):

> There comes a time, however, when the cumulative effect of repetitive prejudicial error becomes so flagrant that no instruction or series of instructions can erase it and cure the error.

A prosecutor must always remember that he or she does not conduct a vendetta when trying any case, but serves as an officer of the court and of the state with the object in mind that all admissible evidence and all proper argument be made, but that inadmissible evidence and improper argument be avoided. We recognize that the conduct of a trial is demanding and that if prosecutors are to perform as trial lawyers, a zeal and enthusiasm for their cause is necessary. However, each trial must be conducted within the rules and each prosecutor must labor within the restraints of the law to the end that defendants receive fair trials and justice is done. If prosecutors are permitted to convict guilty defendants by improper, unfair means, then we are but a moment away from the time when prosecutors will convict innocent defendants by unfair means. Courts must not permit this to happen, for when it does the freedom of each citizen is subject to peril and chance.

We are aware of the trauma to which a woman is subjected when she must testify as the prosecuting witness in a rape case. We are sensitive to the physical and emotional drain that is caused by being subjected to such an ordeal. However, at the same time, we recognize that we must require that any defendant be given the benefit of the presumption of innocence until proved guilty and convicted following a fair trial. As noted in *State v. Case, supra*:

> "Fair trial" certainly implies a trial in which the attorney representing the state does not throw the prestige of

his public office, information from its records, and the expression of his own belief of guilt into the scales against the accused. See *State v. Susan* (1929), 152 Wash. 365, 278 Pac. 149.

*State v. Case, supra* at 71.

■ In *State v. Music*, 79 Wn.2d 699, 715, 489 P.2d 159 (1971), it is stated:

> The question to be resolved is whether there is a substantial likelihood that [the misconduct] affected the jury's verdict and, thus, deprived the [defendant] of his right to a fair and impartial trial.

The decision to grant or deny a new trial based upon allegations of prosecutorial misconduct depends upon the facts of each case and rests within the sound discretion of the trial judge. *State v. Carr*, 160 Wash. 83, 294 P. 1016 (1930); *State v. Downs*, 11 Wn. App. 572, 523 P.2d 1196 (1974); *State v. Jefferson*, 11 Wn. App. 566, 524 P.2d 248 (1974). Here, however, it is patent that the cumulative effect of the many instances of misconduct prejudiced and effectively denied the defendants' constitutional right to a fair trial. *State v. Simmons*, 59 Wn.2d 381, 368 P.2d 378 (1962); *State v. Case, supra*; *State v. Reeder*, 46 Wn.2d 888, 285 P.2d 884 (1955). The statement in *State v. Montgomery*, 56 Wash. 443, 447-48, 105 P. 1035 (1909), is particularly appropriate:

> It is not our purpose to condemn the zeal manifested by the prosecuting attorney in this case. We know that such officers meet with many surprises and disappointments in the discharge of their official duties. They have to deal with all that is selfish and malicious, knavish and criminal, coarse and brutal in human life. But the safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded, and such officers are reminded that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can

hope for. Their devotion to duty is not measured, like the prowess of the savage, by the number of their victims.

The convictions are reversed and the case remanded for a new trial.

WILLIAMS, C.J., and ANDERSEN, J., concur.