

FILED
COURT OF APPEALS DIV
STATE OF WASHINGTON

2013 JUL 29 AM 10: 29

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68503-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE MARLOS REYES, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: <u>July 29, 2013</u> |
| | ) | |

Cox, J. – Jose Reyes was convicted of one count of first degree child rape and two counts of second degree child rape. On appeal, he claims the trial court abused its discretion in denying his motion for a mistrial based on prosecutorial misconduct. He also argues, for the first time on appeal, that the prosecutor committed misconduct when she stated that the State could have charged Reyes with additional crimes.

We hold that the trial court did not abuse its discretion when it denied the motion for a mistrial. As for the prosecutor's statements regarding additional crimes, we assume without deciding that the prosecutor's statement was improper. But we conclude that Reyes fails to establish any prejudice.

In 2004, N.H. lived with her mother, younger sister, mother's boyfriend, and Reyes. N.H. testified that Reyes had sexual intercourse with her twice when they were living together. At the time, N.H. was 11 years old, and Reyes was in his 40s.

Around the time of N.H.'s 12th birthday, N.H.'s mother, Rosa Melchor, found N.H. standing in Reyes's room during the early morning hours. Melchor told Reyes to move out of the apartment.

After Reyes moved out, N.H. left the house and was missing for a month. Melchor contacted law enforcement when she saw Reyes's truck outside a home in White Center. Law enforcement found N.H. underneath a bed at that home. At the time, N.H. denied any sexual contact with Reyes.

Melchor took N.H. for a sexual assault examination. The doctor testified that she did not see any evidence of injury. When the sexual assault kit was tested, one sperm cell was found on N.H.'s underwear.

DNA testing of the underwear revealed one male and one female contributor. A forensic scientist explained that "it was 2.1 trillion times more likely that the observed profile occurred as a result from [N.H.] and Jose Reyes than if it had been [N.H.] and another unrelated, unknown man from the U.S. population."

N.H. went missing again until January 2006. She testified that she lived with Reyes in a tent in a park during this time period. She testified that Reyes had sexual intercourse with her every two days or every day.

N.H. went missing again. During this time period, N.H testified that she lived with Reyes in an apartment in Everett.

N.H. did not contact law enforcement about Reyes until 2010. N.H. and Melchor decided to tell law enforcement about Reyes when N.H. saw him watching her while she walked to school.

2

By amended information, the State charged Reyes with one count of first degree child rape occurring between November 1, 2004 and January 15, 2005 when N.H. was 11 years old. The State charged Reyes with two counts of second degree child rape occurring between January 16, 2005 and January 15, 2006 when N.H. was 12 years old.

After the State's closing argument, Reyes moved for a mistrial based on prosecutorial misconduct. The trial court denied the motion.

A jury found Reyes guilty as charged.

Reyes appeals.

## MOTION FOR MISTRIAL

When Reyes moved for a mistrial, he argued that the prosecutor made several improper statements. Reyes argues on appeal that the trial court abused its discretion when it denied his motion. We disagree.

We review the trial court's decision on a motion for a mistrial for abuse of discretion.[1] A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.[2]

The trial court's decision to deny a motion for a mistrial "will be overturned only when there is a 'substantial likelihood' the prejudice affected the jury's verdict."[3] Determining whether a trial irregularity is so prejudicial as to warrant a

---

[1] State v. Weber, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983).

[2] State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).

[3] State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994) (quoting State v. Crane, 116 Wn.2d 315, 332-33, 804 P.2d 10 (1991)).

mistrial depends on "(1) the seriousness of the irregularity; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it."[4]

Prosecutorial misconduct is a form of trial irregularity.[5] A defendant claiming prosecutorial misconduct bears the burden of establishing that the challenged conduct was both improper and prejudicial.[6]

First, Reyes argues that the trial court's denial of the motion for mistrial was untenable because the jury was never instructed to disregard a remark he contends appealed to the passion and prejudice of the jury.

During the State's closing argument, the prosecutor stated that N.H. was not going to report Reyes to law enforcement until he "wouldn't leave her alone." The prosecutor explained that N.H. decided to report Reyes when he "track[ed] her down" a couple of years after she went back to live with her mom. The prosecutor stated, "But aren't you glad? Aren't you glad he made that choice?" Defense counsel objected, and the court sustained this objection.

During his argument for a mistrial, Reyes argued that it was "very clear to the jury that what was going to be said was aren't you glad that we charged him and brought him in . . . ." But the trial court noted that this argument was not made because there was an objection, which the court sustained. Thus, the trial court could not have instructed the jury to disregard a statement that was never

---

[4] State v. Greiff, 141 Wn.2d 910, 921, 10 P.3d 390 (2000).

[5] State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984).

[6] State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).

made. The court correctly concluded that there was no improper statement for the purposes of a prosecutorial misconduct claim.

Second, Reyes argues the "trial court's finding that the prosecutor's argument was based on a 'reasonable inference' is likewise untenable."

At the beginning of the State's argument, the prosecutor stated, "[Reyes] couldn't stay away. He just couldn't help himself he had to come back. He had to track her down and he had to find her while she was trying to move on with her life trying to live in peace." Reyes asserted in his motion for a mistrial that the prosecutor's statement that Reyes "tracked" N.H. down after she stopped living with him was not supported by any admissible evidence. The court ruled that this statement was not improper because it was a reasonable inference from admissible facts. The court explained that the inference was based on the evidence that Reyes moved a half a mile away from N.H., and N.H. testified that she saw Reyes watching her as she walked to school on three different occasions.

During closing argument, a prosecutor has wide latitude in making arguments to the jury and drawing reasonable inferences from admitted evidence.[7] The trial court correctly concluded that the prosecutor's statement was not improper because it was a reasonable inference from admitted evidence.

In sum, the trial court did not abuse its discretion in denying Reyes's motion for a mistrial.

---

[7] State v. Gregory, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006).

## PROSECUTORIAL MISCONDUCT

On appeal, Reyes argues that the prosecutor committed reversible misconduct based on a statement that was not part of his motion for a mistrial. We conclude that Reyes fails to establish any prejudice.

As noted above, a defendant claiming prosecutorial misconduct bears the burden of establishing that the challenged conduct was both improper and prejudicial.[8] "The court reviews a prosecutor's conduct in the full trial context, including the evidence presented, the total argument, the issues in the case, the evidence addressed in argument, and the jury instructions."[9]

### Improper Statement

Reyes first argues that the prosecutor made an improper statement when she suggested that the State could have charged Reyes with additional crimes. We assume without deciding that the prosecutor made an improper statement.

Courts have concluded that it is improper for a prosecutor to ask the jury to infer that a defendant is guilty of uncharged crimes.[10]

In State v. Torres, this court concluded that a prosecutor made an improper statement during the State's opening statement.[11] There, the prosecutor suggested that one of the defendants, who was charged with rape,

---

[8] Cheatam, 150 Wn.2d at 652.

[9] State v. Calvin, ___ Wn. App. ___, 302 P.3d 509, 516 (2013).

[10] State v. Torres, 16 Wn. App. 254, 256, 554 P.2d 1069 (1976); State v. Boehning, 127 Wn. App. 511, 522, 111 P.3d 899 (2005).

[11] 16 Wn. App. 254, 256, 554 P.2d 1069 (1976).

could also have been charged with burglary.[12] The court stated that "[t]his suggestion was uncalled for and asked the jury to infer that the defendant Castillo was guilty of other crimes not charged in the information."[13]

In State v. Boehning, the prosecutor referred twice to Randy Boehning's dismissed rape charges and suggested that the alleged victim's previous disclosures would have supported these charges.[14] Division Two concluded that these references were improper for several reasons.[15] First, the dismissed rape charges were not "'evidence' from which reasonable inferences and arguments about the [remaining] molestation charges could be made."[16] Second, the dismissed charges were "wholly irrelevant to the State's case."[17] Third, the argument "improperly appealed to the passion and prejudice of the jury and invited the jury to determine guilt based on improper grounds."[18]

Here, the prosecutor appears to have suggested that Reyes was guilty of crimes not charged. During the State's closing argument, the prosecutor described the alleged acts and the time period for each of the three charges. Near the end of this description, the prosecutor stated:

---

[12] Id.

[13] Id.

[14] 127 Wn. App. 511, 522, 111 P.3d 899 (2005).

[15] Id.

[16] Id.

[17] Id.

[18] Id.

7

Now you also heard [N.H.] talk about after this date she ran away and they were at SeaTac park. And that in SeaTac park they lived in a tent and that the defendant would have sex with her almost every day that is Count III. You only have to find and agree that one of those days occurred. Those are the allegations those are the charges. ***Essentially the State could have charged him for every day that he had sex with [N.H.]***

MS. POLLOCK: I am going to object Your Honor. The State has made its decision as to what the charges might be what the State could or couldn't do is not relevant.

THE COURT: Overruled you can proceed.[19]

The emphasized statement in the above quotation is similar to the statements in Torres and Boehning.[20] Thus, we assume without deciding that the prosecutor's statement was improper.

The State argues that the prosecutor's statement was a proper explanation of the unanimity requirement. It asserts that "the prosecutor was explaining to the jury that they needed to be unanimous as to which act constituted each count where the testimony revealed that N.H. and Reyes had had sex more than 10 times (although he was charged with only three counts)." Immediately preceding the statement at issue, the prosecutor appeared to refer to the unanimity requirement. The trial court may have understood that the prosecutor was trying to explain the unanimity requirement because it overruled defense counsel's objection. But the prosecutor's inartful statement came at the end of her description of the charges and did not refer to the jury instructions regarding unanimity. The jury could have interpreted the statement as the

---

[19] Report of Proceedings (Feb. 2, 2012) at 605-06 (emphasis added).

[20] Torres, 16 Wn. App. at 256, Boehning, 127 Wn. App. at 522.

prosecutor asking the jury to infer that Reyes was guilty of uncharged crimes, which is improper.[21] This is especially true given defense counsel's explanation of her objection. Thus, we assume without deciding that the statement was improper.

*Prejudice*

Reyes next argues that the improper statement was prejudicial and that the prosecutor's misconduct requires reversal. We disagree.

If the defendant objected to the improper statements, "the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict."[22]

Here, Reyes objected to the prosecutor's comments, which the court overruled. But the jury was instructed that the "lawyers' statements are not evidence," and the jurors must "disregard any remark, statement, or argument that is not supported by the evidence or the law in [the] instructions." We presume jurors follow the instructions the trial court gives them.[23]

Further, this statement had minor significance given the evidence in this case. N.H. and Melchor's testimony and the DNA testing showing guilt overwhelmingly supported the jury's verdicts. We are convinced that there is not a substantial likelihood that any misconduct by the prosecutor impacted the jury's

---

[21] See Torres, 16 Wn. App. at 256; Boehning, 127 Wn. App. at 522.

[22] State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

[23] State v. Foster, 135 Wn.2d 441, 472, 957 P.2d 712 (1998).

verdict. Because Reyes fails to establish prejudice, his prosecutorial misconduct claim fails.

Reyes asserts that Boehning controls this case. There, Division Two concluded that the prosecutor's reference to the dismissal of three rape charges was an "error [that] alone compels reversal."[24] The court stated that Boehning was prejudiced because the "argument improperly appealed to the passion and prejudice of the jury and invited the jury to determine guilt based on improper grounds."[25]

Unlike Boehning, this case did not involve references to dismissed rape charges. Further, the prosecutor here made only one brief statement during closing argument as opposed to two more drawn out references in Boehning. As discussed above, Reyes fails to establish that there was a substantial likelihood that the statement affected the jury's verdict. Thus, this argument fails.

Reyes also argues that the statement was prejudicial because it contravened one of the trial court's limiting instructions. Defense counsel proposed a limiting instruction, without objection from the State, regarding evidence of alleged sexual acts that occurred after the charging period. The instruction stated that this evidence could be considered only "for the purpose of determining the reasonableness of any delay in reporting the alleged acts of sexual intercourse."[26]

---

[24] Boehning, 127 Wn. App. at 522.

[25] Id.

[26] Clerk's Papers at 41.

Reyes cites State v. Fisher to support his argument.[27] But that case is distinguishable. There, Fisher was charged with four counts of child molestation.[28] During trial, there was testimony regarding Fisher's physical abuse of Melanie Lincoln.[29] The trial court "expressly conditioned the admission of evidence of physical abuse on defense counsel's making an issue of Melanie's delayed reporting."[30] But the prosecutor mentioned the physical abuse during opening argument and "generate[d] a theme throughout the trial that Fisher's sexual abuse of Melanie was consistent with his physical abuse of all his stepchildren and biological children . . . ."[31] The supreme court explained that the prosecutor impermissibly used the evidence in violation of the pretrial ruling.[32]

Further, in Fisher, the supreme court held that there was a substantial likelihood that the prosecuting attorney's misconduct affected the jury's verdict.[33] The prosecutor's emphasis on the physical abuse left the jury "with the wrong

---

[27] Brief of Appellant at 16-17 (citing State v. Fisher, 165 Wn.2d 727, 202 P.3d 937 (2009)).

[28] Fisher, 165 Wn.2d at 733.

[29] Id. at 735-38.

[30] Id. at 747.

[31] Id. at 748.

[32] Id.

[33] Id. at 749.

impression that it must convict Fisher to obtain justice for the harm caused" to Fisher's other stepchildren and biological children.[34]

Here, unlike Fisher, it is not clear that the prosecutor was contravening the trial court's limiting instruction. The prosecutor did not explicitly refer to alleged acts of sexual intercourse outside of the charging period. Additionally, there was not a substantial likelihood that the statement affected the jury's verdict because it was only one statement during closing argument. In contrast, the prosecutor in Fisher used the evidence to develop a theme throughout the trial.[35] In sum, Reyes's reliance on Fisher is not helpful.

Finally, Reyes contends that there is a substantial likelihood that the prosecutor's statement affected the jury's verdict "given the totality of the prosecutor's other objectionable statements." He highlights several "objectionable statements," including those the trial court properly determined did not amount to misconduct in the motion for a mistrial. Reyes also points to other statements, but fails to cite authority to support his assertion that these statements were improper. Because the trial court properly determined that there was no misconduct for some of these statements and Reyes fails to cite authority to support his assertion about the others, this argument fails.

[34] Id.

[35] Fisher, 165 Wn.2d at 748.

We affirm the judgment and sentence.

_____Cox, J._____

WE CONCUR:

_____                    _____Becker, J._____