# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71027-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| RAMON CARRILLO-ALEJO, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 14, 2015 |

SPEARMAN, C.J. — On August 22, 2013, Ramon Carrillo-Alejo was convicted of one count of rape of a child and two counts of child molestation. He appeals, claiming that defense counsel was ineffective for failing to request a limiting instruction for evidence admitted under ER 404(b). In a statement of additional grounds, he also asserts claims of prosecutorial misconduct, abuse of discretion, and a Brady[1] violation. We find no error and affirm.

## FACTS

Ramon Carrillo-Alejo and F.H.'s mother met when they were coworkers. When Carrillo-Alejo needed a place to live, he arranged to rent a room in the apartment shared by F.H. and her parents. He continued to live with the family when they moved first to one and then to another residence.

---

[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

F.H. was four or five years old when Carrillo-Alejo moved in with her family, and she was almost nine when he moved out. F.H.'s parents often worked two jobs and Carrillo-Alejo sometimes cared for F.H. while her parents were at work. F.H. and her parents treated Carrillo-Alejo as a member of the family and F.H. called him "uncle." Verbatim Report of Proceedings (Aug. 8, 2013) at 44.

F.H. testified that Carrillo-Alejo began to sexually abuse her when she was about seven years old. She described multiple incidents of Carrillo-Alejo placing her hand on his penis, masturbating on her, and performing oral sex on her. F.H. did not tell anyone about the abuse until the fall of 2012 when she told her school counselor, Amy Cameron. Soon thereafter F.H. disclosed the abuse to her mother. Her parents had noticed changes in her behavior the previous summer when F.H. began having nightmares, refused to sleep alone in her room, and refused to greet Carrillo-Alejo.

Ms. Cameron reported F.H.'s disclosures to Child Protective Services. (CPS). Detective Angela Galetti followed up with the victim's family. Galetti interviewed Carrillo-Alejo, using Officer Diego Moreno as Spanish interpreter. Carrillo-Alejo acknowledged that he had lived with F.H.'s family and had taken care of F.H. while her parents worked, but denied abusing her. Galetti had Carolyn Webster, a child interview specialist employed by the prosecutor's office, interview F.H. During the interview F.H. told Ms. Webster that Carrillo-Alejo had also had sexual contact with two of her female friends.

## Evidence of Prior Bad Acts

The State moved to admit evidence that Carrillo-Alejo had warned F.H. to keep the abuse a secret and had given her gifts and candy. The State also offered evidence that Carrillo-Alejo had engaged in collateral sexual contact including kissing and massaging. The State argued the evidence was admissible under ER 404(b)[2] because the threats and gifts explained F.H.'s delay in reporting the abuse and the collateral sexual contact showed Carrillo-Alejo's lustful disposition toward F.H. The State also argued the evidence was admissible as part of the res gestae of the crime. Defense counsel objected only to the evidence of threats and gifts. The State did not seek admission of evidence that Carrillo-Alejo had had sexual contact with any other girls.

After conducting an ER 404(b) analysis,[3] the trial court admitted the offered evidence, but limited the evidence of gifts, money, and candy to those instances directly connected with incidents of abuse. Defense counsel did not request a limiting instruction.

---

[2] ER 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[3] To admit evidence offered under ER 404(b), the trial court must (1) "find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

At trial, the State elicited testimony from F.H. that on one occasion Carrillo-Alejo molested both F.H. and her friend, Anna. Defense counsel did not object to the testimony and cross-examined F.H. about the incident. Counsel also questioned F.H. about an incident involving another friend, Kaley, that F.H. had mentioned in her interview with Carolyn Webster but that F.H. did not testify to on direct. Defense counsel took no exception to the court's instructions to the jury, which did not include a limiting instruction regarding the 404(b) evidence or the evidence concerning the other little girls.

## DISCUSSION

Carrillo-Alejo argues that he received ineffective assistance because his trial counsel did not request a limiting instruction for the ER 404(b) evidence admitted by the trial court.[4] He argues that the jury likely used the evidence of collateral sexual activity with F.H. as evidence of propensity and the evidence of threats and gifts to corroborate the veracity of F.H.'s testimony. The State argues that defense counsel did not request a limiting instruction for tactical reasons and that foregoing the instruction was not deficient performance. The State further argues that Carrillo-Alejo has failed to show prejudice from the lack of a limiting instruction.

We review an ineffective assistance of counsel claim de novo. State v. White, 80 Wn. App. 406, 410, 907 P.2d 310 (1995). The defendant has the burden of establishing ineffective assistance of counsel. State v. Humphries, 181

---

[4] We note that on appeal the only challenge to F.H.'s testimony that Carrillo-Alejo had sexual contact with other girls is raised in his Statement of Additional Grounds.

Wn.2d 708, 719-20, 336 P.3d 1121 (2014). To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance "fell below an objective standard of reasonableness and (2) there was prejudice, measured as a reasonable probability that the result of the proceeding would have been different." Humphries, 181 Wn.2d at 719-20 (citing Strickland v. Washington, 466 U.S. 668, 687-88, 108 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Judicial review of an attorney's performance is highly deferential. Strickland, 466 U.S. at 689. The performance of an attorney "is not deficient if it can be considered a legitimate trial tactic." Humphries, 181 Wn.2d at 720 (citing State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)).

Where evidence is admitted under ER 404(b), "the party against whom the evidence is admitted is entitled, upon request, to a limiting instruction informing the jury that the evidence is to be used only for the proper purpose and not for the purpose of proving the character of a person in order to show that the person acted in conformity with that character." Gresham, 173 Wn. 2d at 420 (citing State v. Saltarelli, 98 Wn.2d 358, 362, 655 P.2d 697 (1982)). Absent a request, the trial court is not required to give a limiting instruction. State v. Russell, 171 Wn.2d 118, 123, 249 P.3d 604 (2011). Not requesting a limiting instruction may be a tactical decision. Humphries, 181 Wn.2d at 720 (citing cases in which a limiting instruction was not requested in order to avoid drawing attention to the 404(b) evidence). The failure to request an instruction, by itself, does not establish that counsel's performance was deficient. Id.

Carrillo-Alejo fails to establish that his counsel's performance was deficient because the record shows that her decision to not request a limiting instruction was tactical. The case against Carrillo-Alejo turned on the credibility of F.H. and whether the jury believed her testimony. Instead of seeking to limit the use of the evidence regarding collateral sexual contact with F.H. and the other girls, during both cross-examination and closing argument, defense counsel chose to draw attention to it, highlight the inconsistencies in F.H.'s testimony, and thereby impeach her credibility.

During cross-examination, defense counsel questioned F.H. about inappropriate conduct with other little girls, and even elicited testimony about one of F.H.'s friends that was not mentioned during direct examination. In closing argument, defense counsel referred to this testimony and argued that the State's failure to call the other little girls as witnesses, or to investigate their alleged abuse, cast doubt on F.H.'s credibility. Similarly, defense counsel used the evidence of gifts to tell a counter-narrative, suggesting that instead of evidence of a crime, the gifts were simply indications that Carrillo-Alejo had been helpful to the family. Because counsel's choice to not seek a limiting instruction for the ER 404(b) evidence was clearly a legitimate trial tactic, it does not constitute deficient performance. Id. at 720.

In his statement of additional grounds, Carrillo-Alejo asserts three further claims: that prosecutorial misconduct violated his right to a fair trial, that the trial court abused its discretion in admitting the 404(b) evidence, and that the State withheld evidence in violation of Brady 373 U.S. 83 (requiring that prosecutors

disclose evidence in their possession or knowledge that is favorable to the defense). The claims are without merit.

To prevail on a claim of prosecutorial misconduct, the defendant must establish that the prosecutor's conduct was "'both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). If the defendant does not object to alleged misconduct at trial, the issue of prosecutorial misconduct is waived "unless the misconduct was 'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" State v. Weber, 159 Wn. 2d 252, 270, 149 P.3d 646 (2006) (quoting State v. Stenson, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997)).

Carrillo-Alejo alleges cumulative error based on four instances of prosecutorial misconduct: introducing improper evidence about his conduct with F.H.'s friend Anna, referring to Carrillo-Alejo's nationality, expressing an opinion about Carrillo-Alejo's guilt in closing argument, and disparaging counsel for the defense. Carrillo-Alejo acknowledges, as he must, that because there was no objection to the alleged misconduct below, the higher standard of review is applicable to these claims. But, except as to his claim that the prosecutor referred to his nationality, Carillo-Alejo cites no authority and makes no argument as to why or how the alleged misconduct was flagrant and ill intentioned. Nor does he explain how a timely objection

would have been inadequate to result in either exclusion of the evidence or an instruction to the jury sufficient to mitigate any prejudice.

With regard to the reference to Carrillo-Alejo's nationality, we conclude there was no impropriety. A prosecutor may not refer to a defendant's race or nationality in order to imply that a member of defendant's race is more likely than a member of a different race to commit the crime charged. State v. Torres, 16 Wn. App. 254, 257, 554 P.2d 1069 (1976). References to race or nationality that appeal to the jury's prejudices are likewise improper. State v. Belgarde, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).

In this case, Carrillo-Alejo's nationality was mentioned only in passing during F.H.'s testimony when she stated that she did not disclose the abuse because Carrillo-Alejo had warned her to stay quiet and told her that he had killed people "in his place ... in Ondoda." VRP (Aug. 20, 2013) at 59-60. During closing argument, the prosecutor made reference to this testimony to explain why F.H. had delayed in disclosing the abuse. These brief mentions of Carrillo-Alejo's nationality did not appeal to the jury's prejudice or imply that a member of his nationality was more likely to commit the crime charged than a person of another nationality. The remarks were not improper.

Accordingly, we reject each of Carrillo-Alejo's claims of prosecutorial misconduct because either he waived them or failed to establish misconduct. Consequently, his claim of cumulative error also fails.

8

Carrillo-Alejo next claims that the trial court abused its discretion in admitting the 404(b) evidence. We review evidentiary decisions for abuse of discretion. In re Pers. Restraint of Duncan, 167 Wn.2d 398, 402, 219 P.3d 666 (2009). To admit 404(b) evidence, the trial court must (1) find by a preponderance of the evidence that the prior misconduct occurred; (2) identify the purpose for which the evidence is offered; (3) determine whether the evidence is relevant; and (4) weigh the probative value against the risk of unfair prejudice. State v. Gresham, 173 Wn.2d at 421. The trial court properly performed this analysis. The trial court questioned the prosecutor for the purpose of the evidence, reviewed the transcript of F.H.'s interview with the child interview specialist, determined that the evidence was relevant, weighed its probative value against any prejudicial effect, and admitted only the evidence directly connected to incidents of abuse. We find no abuse of discretion.

Lastly, Carrillo-Alejo claims that the State suppressed evidence in violation of Brady. To establish a Brady violation, a defendant must demonstrate that (1) the evidence at issue is favorable to the accused; (2) the evidence was willfully or inadvertently suppressed by the State; and (3) prejudice resulted. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); State v. Mullen, 171 Wn.2d 881, 895, 259 P.3d 158 (2011) (quoting and explaining the Strickler test). Carrillo-Alejo's claim concerns a report prepared by F.H.'s school counselor, Amy Cameron. Ms. Cameron testified on direct examination that after speaking

9

with F.H. she "immediately called Child Protective Services." VRP (Aug. 19, 2013) at 21. On cross-examination, counsel for the defense asked Ms. Cameron if she kept a written record or made a written report of the incidents involving CPS. Ms. Cameron replied "[w]ell, I – I write up a report that goes to our district office, and the CPS report goes in ... I write –I write up what I have reported to CPS." VRP (Aug. 19, 2013) at 24. Carrillo-Alejo argues that this report was suppressed by the State in violation of Brady. The record is inadequate for us to consider this issue. There is no indication whether Ms. Cameron's report is favorable to Carrillo-Alejo or if the State knew of the report or ever had it in its possession. Absent such evidence, we are unable to determine whether a Brady violation occurred.

Affirmed.

WE CONCUR: