[Nos. 36922, 36923, 36924. Department Two. October 15, 1964.]

THE STATE OF WASHINGTON, *Respondent*, v. CECIL MURRIAL BAKER *et al., Appellants*.*

*Dimmick, Sampson & Savage,* by *Anthony Savage, Jr.,* for appellants.

*Charles O. Carroll, James S. Munn,* and *James E. Kennedy,* for respondent.

HAMILTON, J.—Defendants, Cecil Murrial Baker, Freddie Lee Davis, and Ernest Warren Woods, were jointly charged, tried, and convicted of the crime of robbery. They appeal.

The following is a summary of events leading up to their accusation and conviction, as revealed by the state's evidence.

On August 6, 1962, Walter A. Giebenrath, an elderly farmer from Nebraska, arrived by train in Seattle to attend

*Reported in 395 P. (2d) 756.

the World's Fair. He carried with him approximately $500. As he stood in the railway station getting his bearings, defendant Baker introduced himself as a neighboring farmer from Kansas. During the ensuing conversation Baker offered to assist Mr. Giebenrath in obtaining a hotel room at the Blackstone Hotel.

The two men left the depot and commenced walking toward the hotel. They had traversed two or three blocks when they were approached by defendant Davis, who asked directions to a certain apartment house. Upon being informed they could not help him, Davis fell into step and conversation with them during the course of which he challenged their "sporting blood." A coin-matching game developed. Whether Mr. Giebenrath participated in the game and to what extent is in dispute.

Mr. Giebenrath left the two men and their game and proceeded on to the Blackstone Hotel, where he registered, went to his room, and prepared to go to the Fair. As he was about to leave, Baker contacted him by telephone and requested that he come to the corner of Third Avenue and Marion Street to settle a dispute which had developed with Davis. Mr. Giebenrath agreed.

Upon arrival at the designated intersection, Mr. Giebenrath found a dispute in progress relating to his ability to pay for losses in the coin-matching game. To settle the dispute, he was induced to show the amount of money he carried. Baker grabbed the money, knocked him down and, together with Davis, ran east on Marion Street.

As Mr. Giebenrath arose from the sidewalk, defendant Woods, who was apparently nearby, jumped on his back saying he was a plainclothesman and that they did not stand for "rough stuff" in Seattle. Mr. Giebenrath shook loose from Woods, who then followed Baker and Davis and along with them got into an automobile and continued flight. Mr. Giebenrath pursued on foot until he found a police car. He reported the incident, and with the police officers overtook defendants' vehicle. The defendants were arrested, searched, and found to be possessed of substan-

tial sums of money, $390 of which Baker acknowledged obtaining from Mr. Giebenrath.

Baker was the only one of the defendants to take the witness stand. In substance, he admitted knowing Davis and Woods, meeting Mr. Giebenrath at the depot, commencement of the coin-matching game, and a subsequent telephone call to Mr. Giebenrath at the Blackstone Hotel. He denied that any force had been used in obtaining money from Mr. Giebenrath or that he was fleeing from such an act when apprehended. He asserted that the $390 in his possession represented a portion of Mr. Giebenrath's losses in the coin-matching game.

On appeal, defendants make two assignments of error: (1) That the trial court erred in refusing to orally instruct the jury during the course of the trial that statements made by individual defendants were admissible only against the defendant making such statement; and (2) that the trial court erred in permitting the deputy prosecuting attorney to argue facts not in evidence and to inferentially express his belief in the veracity of the complaining witness.

The first assignment of error arises out of the following objection and ruling, occurring during the direct examination of Mr. Giebenrath:

"Q. Now, would you just tell us about the walk you took as you left the depot, and in what direction, if you can recall, or if you know the town well enough, or whatever you can tell us about the walk you took. A. *Well, we took a walk away from the depot, some two blocks or so, and then this here other man come up and approached us, and he said he had just been rolled by a woman and*—Mr. Leavitt: Your Honor, I think at this point, since there are three defendants, and there are three separate, real charges pending here against three individuals, that at least until somebody establishes a conspiracy, or something of that nature, the jury should be instructed that the statements made by any single defendant are admissible only against that defendant. The Court: I will instruct the jury in writing, if requested to do so, if at that time it is necessary under the record at that time to so instruct them. I won't instruct them verbally now. Mr. Leavitt: Will the Court note an exception? The

COURT: You can have your exception on the record." (Italics ours.)

It is conceded by the defendants that no further request for any instruction, either orally or in writing, was tendered. Absent a request the trial court did not submit a written instruction.

 To support their first assignment of error, appellants cite the cases of *State v. Goodwin*, 29 Wn. (2d) 276, 186 P. (2d) 935 (1947), and *State v. Taylor*, 47 Wn. (2d) 213, 216, 287 P. (2d) 298 (1955), wherein it is stated:

". . . Confessions of one defendant, jointly tried with another, may be introduced in evidence; but in such cases, the defendant or defendants who did not make the confession and were not present when it was made should be protected by proper statements to the jury that the confession should not be considered as against him or them. . . ."

The present case, however, does not fall into the ambit of the rule of the *Goodwin* and *Taylor* cases. We are not here dealing with an admission or confession. The statement admits nothing, except the possible misfortune of defendant Davis, which if believed or disbelieved by the jury could hardly be deemed erroneously prejudicial to defendants Baker and Woods. *State v. Kelly*, 139 Wash. 636, 247 Pac. 939 (1926).

We find no merit in the first assignment of error.

The second assignment of error challenges statements made by the deputy prosecuting attorney in his closing argument to the jury. In the course of such argument counsel for the state referred to the fact that the complaining witness had given a statement to him at the time of the issuance of the information charging the defendants with the crime for which they were standing trial. By these statements, defendants contend the deputy prosecuting attorney expressed his personal belief in their guilt, contrary to the rule laid down in *State v. Susan*, 152 Wash. 365, 278 Pac. 149 (1929); *State v. O'Donnell*, 191 Wash. 511, 71 P. (2d) 571 (1937); and *State v. Case*, 49 Wn. (2d) 66, 298 P. (2d) 500 (1956).

██ The statements in question were made in response to defendants' argument that the state had failed to call two officers who had taken a statement from the complaining witness, and that as a result the jury had not been informed as to what his original version of events might have been. While the argument advanced by the deputy prosecuting attorney was not of a type warranting full approval, nevertheless, it was invited and was not in such form as to render it reversible error. Furthermore, no motion to strike the remarks or to instruct the jury to disregard them was interposed. *State v. Taylor, supra.*

We find no merit in defendants' second assignment of error.

The judgments of conviction are affirmed.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.