IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 79765-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ANDREW LEE BRANCH, JR, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

SMITH, J. — Andrew Branch Jr. appeals his conviction for possession of a stolen vehicle. He contends that the trial court erred by admitting an officer's testimony that he saw Branch in the vehicle several days before Branch's arrest. Branch also contends that the prosecutor committed reversible misconduct during closing, that his counsel was ineffective for not objecting to the prosecutor's comments, and that cumulative error warrants reversal. We hold that Branch failed to preserve error with regard to the admission of the officer's testimony. We further hold that although some of the prosecutor's statements during closing were improper, none were prejudicial. Therefore, defense counsel was not ineffective for not objecting to them, and cumulative error does not warrant reversal. We affirm.

## FACTS

The State charged Branch in September 2018 with one count of

Citations and pin cites are based on the Westlaw online version of the cited material.

possession of a stolen vehicle.[1]  At trial, Officer Sean Culbertson of the Seattle Police Department testified that while on patrol around 5:00 a.m. on July 24, 2018, he stopped a car after he saw it make an illegal maneuver.  Branch, who was driving, got out of the car and left it running.  The car, a silver 1992 Honda Accord, had been reported stolen eight days earlier.

Officer Culbertson testified that when he ran the car's rear license plate number, he discovered it belonged to a 2002 Honda Civic, not a 1992 Honda Accord.  Officer Culbertson thus placed Branch under arrest for possession of a stolen vehicle.  Officer Nicholas King, who arrived on scene after Officer Culbertson, testified that he removed the rear license plate from the car.  Officer King also removed a key from the ignition and placed it, together with the license plate, into evidence.  A detective later testified that the key recovered from the ignition appeared to be a "shaved" key, i.e., a key whose ridges had been filed down to "make[ ] the key more accessible to a variety of make and models of cars."  And a latent print examiner testified that a fingerprint found on the back of the license plate matched prints later taken from Branch.

Officer Nathan Lemberg also testified at Branch's trial.  Officer Lemberg testified that on July 18, 2018, i.e., six days before Branch was arrested, he was patrolling the Aurora corridor on his bicycle when a silver Honda Accord caught his attention.  He testified that "[a] black male, 30s with long dread locks past his shoulder" was sitting in the vehicle.  Officer Lemberg ran the license plate

---

[1] The State also charged Branch with one count of violation of the Uniform Controlled Substances Act, chapter 69.50 RCW.  That charge is not at issue in this appeal.

number for the Accord, but by the time he learned it had been reported stolen, the vehicle had left and Officer Lemberg was no longer in the area. Officer Lemberg broadcasted the information over the radio but did not take any other action that day with regard to the Accord.

Officer Lemberg testified that several days later, he was scheduled to patrol Aurora again, so he "wanted to see if the vehicle was still reported stolen and if [he] needed to be looking for it." He then testified as follows:

[PROSECUTOR:] And did you see that there had been [an] arrest for the – for that vehicle?

[OFFICER LEMBERG:] Yes.

[PROSECUTOR:] Did you recognize the person that was under arrest?

[OFFICER LEMBERG:] Yes.

[PROSECUTOR:] Had you had a prior contact with that person?

[OFFICER LEMBERG:] Yes.

[PROSECUTOR:] Is that person in the room today?

[OFFICER LEMBERG:] Yes.

[PROSECUTOR:] Could you please identify the person?

[OFFICER LEMBERG:] It's the black male with the dread locks in the white long sleeve button down.

[PROSECUTOR:] How sure are you that the person you saw in the car on July 18th, 2018 is the same person that you saw had been arrested?

[OFFICER LEMBERG:] If I had to assign a number to it I would say around 75 percent.

[PROSECUTOR:] Is that the same for the person you saw in the car on July 18th and you see today?

3

[OFFICER LEMBERG:]  Yes.

[PROSECUTOR:]  And you – and it's correct you wrote a report about this after?

[OFFICER LEMBERG:]  That's correct.

The jury convicted Branch of possession of a stolen vehicle.  Branch appeals.  Additional facts related to the issues Branch raises on appeal are set forth below in the analysis of those issues.

ANALYSIS

*Admission of Officer Lemberg's Testimony*

Branch contends that Officer Lemberg's testimony about his July 18 encounter with the Accord constituted evidence of a prior bad act under ER 404(b).[2]  Accordingly, Branch argues, the trial court erred by admitting the testimony without balancing its probative value against its prejudicial effect.[3]  He contends further that the trial court's error was not harmless and, thus, reversal is required.  Because Branch failed to preserve error with regard to the admissibility of Lemberg's testimony as a prior bad act, we disagree.

"The appellate court may refuse to review any claim of error which was not raised in the trial court."  RAP 2.5(a).  Additionally, "[e]rror may not be predicated

---

[2] ER 404(b) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[3] "Before a trial court may admit evidence of other crimes or misconduct, it must . . . balance the probative value of the evidence against the danger of unfair prejudice."  State v. Mee, 168 Wn. App. 144, 154, 275 P.3d 1192 (2012).

upon a ruling which admits . . . evidence unless . . . a timely objection . . . is made, *stating the specific ground of objection*, if the specific ground was not apparent from the context." ER 103(a)(1) (emphasis added).

Here, Branch did not object below to the admission of Officer Lemberg's testimony on the ground of ER 404(b). To be sure, Branch did move in limine to exclude Officer Lemberg's testimony. But that motion asserted that Lemberg's later identification of Branch was impermissibly suggestive under an application of the Manson[4] factors, and that its probative value was outweighed by its prejudicial effect for *that* reason. Branch also made a general motion in limine to exclude prior bad acts evidence under ER 404(b), but Branch did not mention Officer Lemberg's testimony in the context of that motion. Rather, it is clear from the argument on that motion that it was directed at evidence regarding another pending case and Branch's other contacts with police, not the July 18 contact with Officer Lemberg. Finally, before Officer Lemberg testified, the prosecutor expressed concern about the scope of examination and whether counsel could elicit specifics about how Officer Lemberg identified Branch, e.g., by reading the arrest report and looking at the location. But at no point in the resulting colloquy did Branch's counsel contend that Officer Lemberg's testimony about the July 18 encounter constituted evidence of a prior bad act.

In short, Branch did not argue below that Officer Lemberg's testimony about the July 18 encounter constituted evidence of a prior bad act under ER

---

[4] Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

404(b). And although Branch did contend that Officer Lemberg's identification of Branch was impermissibly suggestive, he does not renew that argument on appeal.[5] Furthermore, Branch does not argue that the trial court's admission of Officer Lemberg's testimony was an error of constitutional magnitude that can be raised for the first time on appeal. Cf. State v. Jackson, 102 Wn.2d 689, 695, 689 P.2d 76 (1984) ("Evidentiary errors under ER 404 are not of constitutional magnitude.") For these reasons, we decline to consider Branch's ER 404(b) challenge to Officer Lemberg's testimony.

*Prosecutorial Misconduct*

Branch contends that the prosecutor committed reversible misconduct during closing. We disagree.

Prosecutorial misconduct may deprive a defendant of his guaranty to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution. In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012) (plurality opinion). "To prevail on a claim of prosecutorial misconduct, the defendant must establish 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126

---

[5] Alternatively, to the extent that Branch does raise this argument on appeal, it is not adequately briefed to warrant consideration. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (appellate court "will not consider an inadequately briefed argument").

(2008)). "We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions." State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

If the defendant establishes that a prosecutor's statements are improper, "we determine whether the defendant was prejudiced under one of two standards of review." State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." Emery, 174 Wn.2d at 760. But where, as here, the defendant did not object at trial, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 761 (quoting Thorgerson, 172 Wn.2d at 455).

Here, Branch first contends that the prosecutor committed misconduct by "repeatedly bringing the jurors' attention to the officer witnesses' superior intelligence and telling jurors that this case is just the type of case where everything 'fall[s] into place.'" Specifically, Branch asserts:

> [The prosecutor] told jurors that: "Officer Culbertson does a good job here"; "Probably the best thing – the smartest thing that Officer Culbertson did here . . ."; "Officer King actually takes the plate into evidence . . . which is a very, very smart thing to do here"; Officer

7

> Culbertson "thought about what's the next best thing to do, what's the smartest thing to do? Get that license plate."

(Most alterations in original.) Branch also points out that the prosecutor told jurors, "At the end of the day this was a really good investigation" and also,

> This was a very good investigation, very smart for them to put that plate for fingerprint testing, very smart to get that key out of the ignition the[ ] way they did. Sometimes cases really are straightforward. Sometimes cases really kind of fall into place. And that's what you have here. Absent Mr. Branch making a full confession you have a really good case here.

Branch contends that these statements constituted improper bolstering and that they "interfered with individual jurors' role of assessing the facts, witness credibility, and the quality of the investigation themselves." We agree, in part.

Specifically, although "[a] prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury," Boehning, 127 Wn. App. at 519, a prosecutor may not express a personal opinion independent of the evidence, because juries may believe that prosecutors have insider information that was not shared during trial. See State v. Susan, 152 Wash. 365, 380, 278 P. 149 (1929) ("A jury might well believe that such a statement by a sworn officer of the law, in whom they have confidence, might indicate that such officer was acquainted with facts which had not been disclosed to the jury by the testimony."). Additionally, "it is generally improper for prosecutors to bolster a police witness's good character even if the record supports such argument." State v. Jones, 144 Wn. App. 284, 293, 183 P.3d 307 (2008).

Here, the prosecutor's statement that the case was "straightforward" and

one that "really kind of fall[s] into place" was an acceptable appeal to the jury's common sense based on the evidence the prosecutor referred to immediately before his statement—namely, the key and the license plate. Indeed, the jury was expressly instructed that the evidence in the case included "evidence from which, based on your *common sense* and experience, you may reasonably infer something that is at issue in this case." (Emphasis added.)

However, the prosecutor's statements that the officers made "smart" decisions and that their investigation was "really good"; "a very good investigation" were improper. These statements crossed the line from reasonable inferences from the evidence to personal opinions suggesting that this case was investigated better than other cases with which the prosecutor was familiar. They also bolstered the officers' character by implying that the officers were smart and good investigators.

Nevertheless, we conclude that these comments were not prejudicial. Specifically, unlike Jones, the case on which Branch primarily relies, this was not a case where "the verdict depended substantially on whether the jury found [the officer]'s testimony credible." Jones, 144 Wn. App. at 300-01. Instead, there was substantial evidence of Branch's guilt independent of the officers' testimony—specifically, the shaved key and the presence of Branch's fingerprint on the back of the mismatched license plate.

Furthermore, Branch's selective recounting of the prosecutor's comments omits the context in which they were made. In the course of arguing that Officer Culbertson's decision to take the plate into evidence was "smart" or the "smartest

9

thing to do," the prosecutor also argued, "It wouldn't have made sense for the officer to say let's get fingerprints inside the car because clearly Mr. Branch was in the car."  Similarly, in the course of arguing that the investigation was a "really good investigation," the prosecutor argued:

> The fact that you're going to say that prints should've been done from inside the vehicle to see if there were other people in there, what would that have proven, that other – that he had friends ride around with him in the car?  What would – what would that have get – what would that have helped the State prove?  Nothing.

When the prosecutor's comments are viewed in context, it is clear that the prosecutor was addressing an argument that defense counsel was anticipated to make—i.e., that the officers should have tested the inside of the car for prints— by arguing that the decision not to do so was reasonable.  The prosecutor could and should have made this point without injecting his personal opinion.  But we are not persuaded that, in the context of the total argument and the circumstances at trial, including the other evidence of Branch's guilt, the prosecutor's comments had a substantial likelihood of affecting the jury verdict.  And they certainly were not flagrant and ill intentioned.  Therefore, these comments do not require reversal.

Branch also contends that the prosecutor committed improper bolstering by "claim[ing] that none of the officers had personal relationships with the defendant, 'or something where there's somehow [a] bias'" and by stating, "The witnesses testified the best they could"; "When they didn't know something they asked for clarification"; "They knew – stuff they knew they were readily able to say and stuff they didn't know then they had their recollection refreshed when

10

they looked at their reports"; and "Like, they knew what they were talking about."

We conclude that the prosecutor's claim that the officers did not have personal relationships with the defendant "or something where there's somehow a bias" was improper, but the remaining statements were not. Specifically, "a prosecutor may not make statements that are unsupported by the evidence." Boehning, 127 Wn. App. at 519. To this end, the State does not point to any evidence that would support the prosecutor's claim that the officers did not have a personal relationship with or bias against Branch. Instead, the State argues that it "was not misconduct to note the absence of bias on the part of the officers when there was no evidence of bias." And, to be sure, "a prosecutor may comment on the absence of certain evidence if persons other than the defendant could have testified regarding that evidence." State v. Jackson, 150 Wn. App. 877, 887, 209 P.3d 553 (2009). But here, the prosecutor did not just comment on the absence of *evidence* of a personal relationship with or bias against Branch—rather, the prosecutor stated *as fact* that the officers did not have a relationship with or bias against him. These statements were improper.

The remainder of the prosecutor's statements, however, were not improper. Rather, when viewed in context, they acceptably summarized and drew reasonable inferences from the quality of the witnesses' memories and the manner in which they testified—factors that the jury was expressly permitted to consider in judging credibility.[6]

---

[6] Jury instruction 1 provided in relevant part: "In considering a witness's testimony, you may consider these things: . . . the quality of a witness's memory while testifying; the manner of the witness while testifying; . . . and any other

Additionally, and though improper, the prosecutor's claim that the officers did not have a relationship with or bias against Branch was not prejudicial. As already discussed, this was not a case that turned on the officers' testimony—instead, there was substantial evidence of Branch's guilt independent of that testimony. And Branch cites no authority that persuades us that the prosecutor's single reference to the officers' lack of bias was so flagrant and ill intentioned as to require reversal. Cf. State v. Belgarde, 110 Wn.2d 504, 508-09, 755 P.2d 174 (1988) (reversal required where prosecutor in murder trial told jury "that the defendant [was] 'strong in' a group which the prosecutor describe[d] as a 'deadly group of madmen', and 'butchers that kill indiscriminately'" and that the prosecutor likened to terrorists). Therefore, reversal is not required.

Branch next contends that the prosecutor committed reversible misconduct by saying, "Everything that was testified to is pretty reasonable. It all kind of makes sense. It all flows together. There's nothing that's too outlandish. Everything sounded pretty reasonable." But Branch again omits the context for these comments, which were immediately followed by an appeal to the jury's common sense, a reference to the jury instructions, and a summary of evidence from which the jury could reasonably infer that Branch knew the car was stolen. Taken in context, the prosecutor was merely informing the jury that it could employ common sense and notions of reasonableness in evaluating the

---

factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony."

evidence, as expressly permitted by the court's jury instructions.[7] This was not misconduct.

Finally, Branch contends that the prosecutor committed reversible misconduct by using the phrase "we know" when summarizing the facts. But the record in this case confirms that the prosecutor was not using "we know" to suggest that the State had subjective knowledge of the facts. To the contrary, the record is clear that the prosecutor was not employing "we" to refer to himself or to the State, but to marshal the evidence that was admitted at trial and the reasonable inferences from that evidence. Accordingly, Branch's contention fails. Cf. United States v. Younger, 398 F.3d 1179, 1191 (9th Cir. 2005) (use of the phrase "we know" not improper where used "to marshal evidence actually admitted at trial and reasonable inferences from that evidence, not to vouch for witness veracity or suggest that evidence not produced would support a witness's statements.").

*Ineffective Assistance*

Branch contends that his counsel was ineffective for not objecting to the prosecutor's comments during closing. But as discussed, the prosecutor's improper comments were not prejudicial. Therefore, Branch's counsel was not deficient for not objecting to those comments or to the prosecutor's other

---

[7] Jury instruction 6 provided in relevant part: "The term 'circumstantial evidence' refers to evidence from which, based on your common sense and experience, you may reasonably infer something that is at issue in this case." Additionally, jury instruction 1 allowed the jury to consider "the reasonableness of the witness's statements in the context of all of the other evidence" in considering a witness's testimony.

13

challenged comments, and Branch's ineffective assistance claim fails. See Thorgerson, 172 Wn.2d at 455 ("[S]ince the challenged conduct was not improper or not prejudicial, [the defendant] failed to establish that counsel's performance was deficient."); In re Pers. Restraint of Davis, 152 Wn.2d 647, 757, 101 P.3d 1 (2004) ("To establish a claim of ineffective assistance of counsel, [the defendant] must show both deficient performance and resulting prejudice.").

*Cumulative Error*

As a final matter, Branch contends that cumulative error denied him of his right to a fair trial. Because the prosecutor's nonprejudicial comments during closing are the only errors identified in this appeal, we disagree. See State v. Venegas, 155 Wn. App. 507, 520, 228 P.3d 813 (2010) (cumulative error doctrine "does not apply where the errors are few and have little or no effect on the trial's outcome").

We affirm.

_____

WE CONCUR:

_____            _____