**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

　　　　　　　　Respondent,

　　　v.

OMAR CARRADA-LOPEZ,

　　　　　　　　Appellant.

DIVISION ONE

No. 81995-0-I

UNPUBLISHED OPINION

DWYER, J. — Omar Carrada-Lopez appeals from the judgment entered on a jury's verdict finding him guilty of attempted commercial sexual abuse of a minor. He contends that (1) prosecutorial misconduct deprived him of a fair trial, (2) witness testimony expressing opinions of his guilt denied him a fair trial, and (3) that he was denied effective assistance of counsel with regard to both the asserted prosecutorial misconduct and the challenged witness testimony. None of these claims have merit. Accordingly, we affirm.

I

On April 6, 2018, Renton Police Detective Brian Jordan, as part of an undercover operation targeting sex trafficking, placed an online advertisement on a website entitled SextingForum.com. Detective Jordan, posing as "Sexy Sadie Lynn," attached a suggestive photograph of the back of a female body to the advertisement, stated that she was "looking to have a little fun," and included a phone number at which "Sadie" could be reached at via text message. The

advertisement also stated that "Sadie" was over 18 years of age, as was required by the hosting website.

Between April 13 and May 1, the following text message conversation took place between Carrada-Lopez and the detective (posing as "Sadie"):

April 13 - [CARRADA-LOPEZ]: Hi are u available
April 26 - [DETECTIVE JORDAN]: Next week
April 27 - [CARRADA-LOPEZ]: Ok send me tex[t] then
April 28 - [DETECTIVE JORDAN]: Ok
April 30 - [CARRADA-LOPEZ]: Are u taking appointments
May 1 - [DETECTIVE JORDAN]: I am
May 1 - [CARRADA-LOPEZ]: Cool I would like to make an appointment
May 1- [DETECTIVE JORDAN]: Ok I like to be up front with my customers[.] [I]'m almost 16… don't be scared off tho[ugh], I'm very mature, and willing to do whatever u like. [N]o I'm not cops so don't bother asking, I'm just past playing games. Let me know if that works, if so we can meet up.
May 1 - [CARRADA-LOPEZ]: Ok so where do u do your ins or u willing to do outs?

"Ins" and "outs" are terms regularly used within the sex trade. Carrada-Lopez was asking whether he must go to meet "Sadie" ("ins") or whether "Sadie" would come to a location of his choosing ("outs"). Detective Jordan testified that he said he only does "ins" because a trafficked minor, such as "Sadie," would not have the ability to drive. The conversation between the two continued:

May 1 – [DETECTIVE JORDAN]: I only do ins. [W]hat did u have in mind? Fs oral and how long?
May 1 – [CARRADA-LOPEZ]: Half cuz I don't know if I [am] bait
May 1 – [DETECTIVE JORDAN]: Half hr $75. What does I [am] bait mean? Lol
May 1 – [Carrada-Lopez]: Cop bait

"Fs" refers to "full service" (vaginal intercourse), and is another term commonly used in the sex trade. Detective Jordan responded to Carrada-Lopez's concern by saying that "Sadie" was not a cop, and that she could

2

get into as much trouble as he could. Ultimately, Carrada-Lopez agreed to purchase an hour of "Fs" with "Sadie" for $150 at a location to be determined by "Sadie." "Sadie" continued to indicate that she was a minor, telling Carrada-Lopez that she was "[b]usy at school," and that although she was "young," she was a "business lady."

Carrada-Lopez and "Sadie" arranged to meet in the parking lot of a Renton McDonald's. "Sadie" twice reminded Carrada-Lopez that it was "cash only" and to "bring condoms." Before this meeting took place, Detective Jordan determined that the telephone number he had been communicating with was linked to Carrada-Lopez and obtained a Department of Licensing photograph of Carrada-Lopez. When Carrada-Lopez arrived at the McDonald's, he was spotted in a black Mustang by one of the undercover officers. Detective Jordan then sent a text message to Carrada-Lopez asking what kind of car he was driving, to which Carrada-Lopez responded, "Mustang."

Detective Susan Hassinger, who had been waiting in a marked police vehicle, then arrested Carrada-Lopez. After the arrest, Detective Jordan telephoned the number he had been communicating with. The phone in the Mustang responded by indicating that it was receiving a call from the number Detective Jordan had been using. In the Mustang, Detectives soon found Carrada-Lopez's wallet, which contained $160 in cash and condoms.

Carrada-Lopez was charged with attempted commercial sexual abuse of a minor and felony communication with a minor for immoral purposes. A jury found Carrada-Lopez guilty as charged. To avoid a double jeopardy violation, the trial

3

court dismissed the conviction for communication with a minor for immoral purposes prior to imposing sentence.

Carrada-Lopez appeals.

II

Carrada-Lopez contends that statements made by the prosecutor during voir dire constituted prosecutorial misconduct requiring reversal.  We disagree.

A

Prosecuting attorneys are quasi-judicial officers and have a duty to ensure that defendants receive a fair trial.  State v. Boehning, 127 Wn. App. 511, 518, 111 P.3d 899 (2005).  This duty is violated when the prosecutor "throw[s] the prestige of his public office, information from its records, and the expression of his own belief of guilt into the scales against the accused."  State v. Case, 49 Wn.2d 66, 71, 298 P.2d 500 (1956) (citing State v. Susan, 152 Wash. 365, 278 P.149 (1929)).  Furthermore, it is improper for the State to bolster its case using facts not in evidence.  State v. Jones, 144 Wn. App. 284, 294, 183 P.3d 307 (2008).  The propriety of a prosecutor's conduct is "reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given."  State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994).

When prosecutorial misconduct is claimed, "the defense bears the burden of establishing the impropriety of the prosecuting attorney's comments and their prejudicial effect."  State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).  When the defendant does not object at trial, the appellate claim of error is

deemed waived unless the defendant establishes that the misconduct was "'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice'" that could not have been cured by a curative instruction. State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (internal quotation marks omitted) (quoting State v. Gregory, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006)).

B

Jury selection began on August 7, 2020. Due to the COVID-19 pandemic, voir dire was conducted via Zoom video conferencing. Because of limitations of the video conferencing technology, the prospective jurors were divided into three small groups for questioning. During voir dire, Carrada-Lopez's counsel identified him as a person of color, and the judge informed the prospective jurors that they must act without discrimination, meaning that they must not allow bias to play a role in their judgment during trial. The judge further informed the prospective jurors that during voir dire the lawyers might pose questions regarding bias and unconscious bias.

The prosecutor began each voir dire session by raising the issue of racism. The prosecutor uttered a variation of the following statement to all three groups:

> I wanted to just acknowledge where we are as a community right now. We're confront[ing], you know, 400 years of systemic racism right now, and myself and my boss, the elected Prosecutor, Dan Satterb[e]rg, very much believe in the fact that racism does exist inside this Courthouse and outside of it, that police brutality exists, and that black and brown lives matter. And I say these things because one of the – the fundamental parts of your duty, if you're selected on this, uh – for this jury, is to ensure that Mr. Carrada-Lopez, the Defendant here, receives a fair trial.

This statement was never objected to by the defendant.

Nevertheless, on appeal, Carrada-Lopez asserts that this statement was improper because it referred to facts outside of the record—specifically, the fact that racism exists—and that it improperly invoked the prestige of public office by referring to the deputy prosecutor's employer as an elected official. Moreover, Carrada-Lopez avers, the statement improperly told the jurors that the "prosecutors had transcended racism in their own decision-making, and jurors could be confident it played no role in their prosecution."[1] Carrada-Lopez asserts that, although he did not object at trial, this was flagrant and ill-intentioned misconduct and was so prejudicial that it could not have been cured by a curative instruction. We disagree.

The challenged statements were not improper. The purpose of the statements was to ensure a fair trial—one not impacted by racial bias. After the statement was made to each group of prospective jurors, the prosecutor asked the jurors how, in light of the existence of racism and bias, they would ensure that Carrada-Lopez received a fair trial. The purpose of the voir dire process is to assist the parties in determining the state of mind of the potential jurors, and to help counsel decide whether any juror should be challenged for cause or be removed via peremptory challenge. See State v. Frederiksen, 40 Wn. App. 749, 752, 700 P.2d 369 (1985). The challenged remarks and follow up questions served this proper purpose.

---

[1] Br. of Appellant at 11.

There was no error. Carrada-Lopez thus fails to establish an entitlement to appellate relief.

III

Carrada-Lopez next contends that he received ineffective assistance of counsel because his attorney did not object to the statements discussed in section II. Because Carrada-Lopez does not demonstrate that his counsel performed below an objective standard of reasonableness, his claim fails.

A

To establish ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Deficient performance is that which falls below an objective standard of reasonableness." State v. Weaville, 162 Wn. App. 801, 823, 256 P.3d 426 (2011). An attorney's performance is not deficient if it constitutes a legitimate trial strategy or tactic. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). While the defense counsel has a duty to explore all reasonable lines of defense, there is "no duty to pursue strategies that reasonably appear unlikely to succeed." State v. Brown, 159 Wn. App. 366, 371, 245 P.3d 776 (2011).

A strong presumption of effective assistance exists and the defendant bears the burden of demonstrating an absence in the record of a strategic basis for the challenged conduct. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Prejudice is established when there is a reasonable probability that the outcome of the proceeding would have been different had counsel's

7

performance not been deficient.  McFarland, 127 Wn.2d at 335.  Failure to establish either prong of the test is fatal to the claim of ineffective assistance of counsel.  Strickland, 466 U.S. at 687.

B

Carrada-Lopez asserts that his attorney should have objected to the prosecutor's statements regarding racism in the criminal justice system, the belief that black and brown lives matter, and the elected status of his employer.  As we have explained, the statements made by the prosecutor were not improper.  Accordingly, his attorney acted competently in declining to interpose an objection.

An attorney has no obligation to interpose an objection that the attorney believes will be overruled.  Brown, 159 Wn. App. at 371.  Thus, Carrada-Lopez's lawyer's tactical decision to not object to the challenged statements did not constitute deficient performance.  Moreover, given that Carrada-Lopez is a person of color, the lawyer had good reason to seek to ensure that the selected jurors did not harbor bias, implicit or otherwise, against the defendant based on his race.  In fact, in furtherance of this goal, Carrada-Lopez's counsel specifically asked the trial court to instruct the jurors that bias should play no part in their exercise of judgment.  The court did so.

Carrada-Lopez does not show that his counsel performed deficiently.  Accordingly, Carrada-Lopez fails to show an entitlement to appellate relief on this claim of error.

IV

Carrada-Lopez next contends that the testimony of two detectives constituted improper opinions on his guilt and that reversal and a new trial are required. We disagree.

A

Carrada-Lopez raises this claim of error for the first time on appeal. A claim of error may only be raised for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); State v. Walsh, 143 Wn.2d 1, 7, 17 P.3d 591 (2001). Accordingly, Carrada-Lopez "must identify a constitutional error and show how the alleged error actually affected [his] rights at trial." State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). "[I]t is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review." McFarland, 127 Wn.2d at 333.

Impermissible opinion testimony as to a defendant's guilt may implicate a defendant's constitutional right to a jury trial, which includes "'the independent determination of the facts by the jury.'" State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (quoting State v. Carlin, 40 Wn. App. 698, 701, 700 P.2d 323 (1985), overruled on other grounds by City of Seattle v. Heatley, 70 Wn. App. 573, 854 P.2d 658 (1993)). "No witness, lay or expert, may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." State v. Black, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). However, testimony based solely on physical evidence and an officer's experience, which is not a direct

comment on the defendant's guilt, may be helpful to the jury and does not constitute improper opinion testimony.  Heatley, 70 Wn. App. at 578.

B

Carrada-Lopez first points to Detective Jordan's testimony regarding the elements of the crime and claims that this was an explicit statement of Carrada-Lopez's guilt.  We disagree.

When testifying, the prosecutor asked Detective Jordan why he was discussing money several times when communicating with Carrada-Lopez.  Detective Jordan replied:

> Because that's—it's, uh, the business, just it's—it's an offer and agreement. So um, um, the trafficked minor's exchanging, um, a sexual act for money. Um, it also consummates and meets the elements of the crime that we're talking about.

This testimony referred to the police investigation and the reason why Detective Jordan was conducting his undercover operation in a particular manner.  It did not express an opinion on Carrada-Lopez's guilt, and was not offered in response to an inquiry about the witness's opinion of Carrada-Lopez's guilt.  It was not improper.

Carrada-Lopez next asserts that two statements, one by Detective Jordan and the other by Detective Hassinger, each referencing probable cause, were improper testimonial opinions of guilt.  Detective Jordan testified that, upon arresting Carrada-Lopez, he explained the undercover operation to him and told Carrada-Lopez that "by him showing up, what he—I had probable cause to, um, arrest him."

On the day of the arrest, Detective Hassinger's role was to wait in a marked police vehicle until Detective Jordan informed her via radio that there was probable cause to make an arrest. Once probable cause was established, she was to then make contact with the suspect and place him under arrest. For her part, Detective Hassinger testified that she was advised that there was probable cause for her to make the arrest and that she then did so.

This testimony was offered to explain the investigation and what led to the physical arrest of Carrada-Lopez. "In some instances, a witness who testifies to [their] belief that the defendant is guilty is merely stating the obvious, such as when a police officer testifies that [they] arrested the defendant because [they] had probable cause to believe he committed the offense." State v. Sutherby, 138 Wn. App. 609, 617, 158 P.3d 91 (2007), aff'd on other grounds, 165 Wn.2d 870, 204 P.3d 916 (2009). We have previously held that even a detective's statement that he believed that the defendant committed the offense for which the defendant is then on trial, made in the context of explaining the course of the investigation, is not an impermissible opinion of guilt. State v. Song Wang, 5 Wn. App. 2d 12, 28-29, 424 P.3d 1251 (2018).

Carrada-Lopez claims that the testimony by the detectives, which carried an "aura of reliability,"[2] was unfairly prejudicial because it invaded the province of the jury. However, "police officers' opinions on guilt have low probative value because their area of expertise is in determining when an arrest is justified, not in determining when there is guilt beyond a reasonable doubt." State v.

---

[2] Br. of Appellant at 16.

Montgomery, 163 Wn.2d 577, 595, 183 P.3d 267 (2008). In Montgomery, the court reasoned that, although the opinion testimony was improper, the defendant was not entitled to relief because a timely objection and curative instruction could have mitigated any prejudice caused by the improper testimony. 163 Wn.2d at 596. Similarly, here, any prejudice to Carrada-Lopez could have been easily resolved by a curative instruction. As Carrada-Lopez neither objected nor requested such an instruction, he has waived any claim of error.

Moreover, the jurors were properly instructed that they were the sole judges of the credibility of the witnesses and of the weight and value to be given to the evidence, and of their duty to decide the facts that were proved and to apply the law to those facts. Juries are presumed to follow their instructions. State v. Davenport, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984). Accordingly, even if Carrada-Lopez had demonstrated error, he could not show that it was manifest. See Montgomery, 163 Wn.2d at 595-96 (stating there was no prejudice despite allegedly improper opinion testimony, because the jurors were properly instructed on these matters); Kirkman, 159 Wn.2d at 928 (same).

Thus, Carrada-Lopez fails to show an entitlement to appellate relief.

V

Finally, Carrada-Lopez contends that he received ineffective assistance of counsel because his lawyer did not object to the testimony discussed in section IV. Because the testimony was not improper opinion testimony, Carrada-Lopez fails to establish ineffective assistance of counsel.

12

As previously explained, to demonstrate ineffective assistance of counsel, Carrada-Lopez must show both deficient performance and resulting prejudice. Strickland, 466 U.S. at 687.  "To prove that failure to object rendered counsel ineffective, [the defendant] must show that not objecting fell below prevailing professional norms, that the proposed objection would likely have been sustained, and that the result of the trial would have been different if the evidence had not been admitted."  In re Pers. Restraint of Davis, 152 Wn.2d 647, 714, 101 P.3d 1 (2004) (footnotes omitted).

Carrada-Lopez cannot establish that he received ineffective assistance of counsel because the testimony he now challenges was not improper.

Thus, Carrada-Lopez fails to show an entitlement to appellate relief.

Affirmed.

_____

WE CONCUR:

_____     _____